Matter of Leon v Structure Tech N.Y., Inc. (2024 NY Slip Op 01589)

Matter of Leon v Structure Tech N.Y., Inc.

2024 NY Slip Op 01589

Decided on March 21, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 21, 2024

CV-22-2146
[*1]In the Matter of the Claim of Jorge Leon, Claimant,
v
Structure Tech New York, Inc., et al., Appellants. Workers' Compensation Board, Respondent.

Calendar Date:February 23, 2024

Before:Garry, P.J., Aarons, Lynch, Fisher and Mackey, JJ.

Goldberg Segalla, Rochester (Bradford J. Reid of counsel), for appellants.
Letitia James, Attorney General, New York City (Nina M. Sas of counsel), for respondent.

Mackey, J.
Appeal from a decision of the Workers' Compensation Board, filed October 27, 2022, which ruled that claimant sustained an accidental injury arising out of and in the course of his employment.
On November 9, 2021 claimant, a construction laborer, filed a claim for workers' compensation benefits alleging that, on November 5, 2021, he sustained work-related injuries to his neck, back, right shoulder and hip, both knees and left ankle when he fell into a hole in the floor while carrying rebar. The employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier) controverted the claim, raising issues related to lack of notice and no compensable accident. Following hearings at which claimant testified regarding the incident and to providing notice to his foreperson the day of the accident, which the carrier's witnesses disputed, a Workers' Compensation Law Judge (hereinafter the WCLJ) established the claim, finding that claimant sustained accidental injuries to his neck and back [FN1] that arose out of and in the course of his employment. The WCLJ further found that claimant had produced prima facie medical evidence of injuries to both knees and directed the carrier to produce an independent medical examination (hereinafter IME) regarding causation for those injuries. Upon administrative review, the Workers' Compensation Board affirmed, and this appeal by the carrier ensued.
We affirm. The carrier argues that the Board's decision establishing the claim for neck and back injuries is not supported by substantial evidence, largely based upon the contention that the Board erred in crediting claimant's account over that of the carrier's witnesses. "Whether a compensable accident has occurred is a question of fact to be resolved by the Board and its determination will not be disturbed when supported by substantial evidence" (Matter of Flores v Millennium Servs., LLC, 215 AD3d 1146, 1147 [3d Dept 2023] [internal quotation marks and citations omitted]), which "is a minimal standard and demands only that a given inference is reasonable and plausible, not necessarily the most probable" (Matter of Vaughan v Heritage Air Sys., Inc., 208 AD3d 1562, 1564 [3d Dept 2022] [internal quotation marks and citations omitted]). The burden is on claimant to "establish[ ] that the subject injury arose out of and in the course of [the] employment and, further, [to] demonstrate, by competent medical evidence, the existence of a causal connection between [the] injury and [the] employment" (Matter of Pierre v ABF Frgt., 211 AD3d 1284, 1285 [3d Dept 2022] [internal quotation marks and citations omitted]). Importantly, "[t]he Board is the sole and final judge of witness credibility, and it alone can evaluate the factors relevant to determining whether the testimony of a party or witness is worthy of belief" (Matter of Chiesa v Stillwater Cent. School Dist., 66 AD3d 1085, 1086 [3d Dept 2009] [internal quotation marks and citation omitted]; see Matter of [*2]Zeltman v Infinigy Eng'g, PLLC, 211 AD3d 1280, 1285 [3d Dept 2022]).
Claimant, through an interpreter, testified that at the time of the incident, which occurred around 10:00 a.m. on November 5, 2021, he and his coworker, known to him only as Louis, were carrying large rebars on their shoulders while doing foundation work, when claimant fell into a hole or a "ravine" and the rebar fell on him. Louis helped him up and claimant, in pain from his injuries, stayed at work doing light work until noon. Claimant testified that he informed his foreperson about the incident and that he was in pain, and was told to go home and rest and return when he felt better. Claimant recounted that he was treated at the hospital that day [FN2] and did not thereafter return to work, file an accident report or communicate with the employer. The earliest medical report submitted was from his treating orthopedic surgeon on November 11, 2021, which reflects that claimant reported that the work incident happened while he was "carrying a heavy metal (sic) when he tripped and fell over a hole." The orthopedist diagnosed him with causally-related cervical and lumbar sprains/strains, disc displacement and radiculopathy and derangement to the right shoulder, and noted pain but no diagnoses in his right hip, knees and left ankle, and found that he was temporarily totally disabled. Claimant was next treated by a chiropractor beginning on November 16, 2021, to whom he described the incident at work, who also diagnosed him with causally-related cervical and lumbar radiculopathy and disc disorders and dysfunction.
The carrier called claimant's foreperson, who testified also through an interpreter, in sharp contrast, that claimant never reported an incident, sustaining injury or being in pain on November 5, 2021. The foreperson testified that claimant called him from his car during lunch that day and indicated that he needed to leave early to help a relative or friend who had a back problem, and he gave permission for him to clock out early. He also testified, somewhat inconsistently, that he ate lunch with claimant that day, who never mentioned an injury. He confirmed that claimant was working with a coworker named Louis carrying rebar 30 feet in length that required two people to carry and that, although he was not working with them, he saw them together and was 20 to 40 feet away from where they were moving the rebar. He testified that he did not know Louis, but attested that neither Louis nor anyone else reported an accident to him that day and that Louis worked the remainder of the day. The assistant manager responsible for overseeing workers clocking out of their shifts and accident reports testified that claimant worked that day and clocked out early without providing a reason, but did not report an injury or incident. He testified that, upon clocking out, claimant was asked in writing "[w]ere you injured at work today" and replied "no" and electronically signed the form; the carrier [*3]submitted a copy of the form, which is in English, but did not establish that claimant was able to read it. According to the assistant manager, he first heard about the incident when he received claimant's C-3 claim, and completed an accident report based upon that information. He testified that there were two laborers named Louis on site, both of whom were questioned and gave statements that they did not witness an accident that day; neither the witnesses nor their purported statements were produced.
At the hearing, the WCLJ ruled that the carrier was precluded from producing an IME on causal relationship relative to claimant's neck and back injuries based upon its failure to timely file an IME report, and that the medical evidence submitted by claimant established a causal relationship. The key disputed issues were notice and whether the injuries occurred in the course of employment, and the WCLJ and Board held that claimant's C-3 claim form provided the carrier with timely actual notice (see Workers' Compensation Law § 18). Although different inferences could have been drawn from the conflicting testimony, "the Board is the sole arbiter of witness credibility" and, as such, "has broad authority to resolve factual issues based on credibility of witnesses and draw any reasonable inference from the evidence in the record" (Matter of Zeltman v Infinigy Eng'g, PLLC, 211 AD3d at 1283-1284 [internal quotation marks and citations omitted]). To the extent that the carrier's arguments on appeal essentially ask this Court to override the Board's credibility determinations, this Court "lacks the ability to weigh conflicting proof" (Matter of DiBenedetto v Rochester City Sch. Dist., 179 AD3d 1419, 1421 [3d Dept 2020] [internal quotation marks and citations omitted]) and, moreover, "it is not the role of a reviewing court to substitute its view of the factual merits of a controversy for that of an administrative agency" (Matter of Axel v Duffy-Mott Co., 47 NY2d 1, 6 [1979]). The determination to credit claimant's account over the carrier's witnesses was based upon claimant's consistent testimony regarding the incident and his injuries, his provision of notice to the employer by filing a C-3 four days later and evidence that he obtained medical treatment six days later, and the carrier's failure to produce any testimony or evidence that directly contradicted his account of the incident. Also, the Board discredited the carrier's explanation for its failure to produce claimant's coworker, who it found would have been the best witness. As the Board's factual and credibility determinations were not, as the carrier contends, based upon an inaccurate reading of the record but, rather, were based upon a "reasonable inference from the evidence in the record," and its determination was supported by substantial evidence, it will not be disturbed (Matter of Flores v Millennium Servs., LLC, 215 AD3d at 1148 [internal quotation marks and citations omitted]). The carrier's [*4]remaining claims have been reviewed and found to be without merit.
Garry, P.J., Aarons, Lynch and Fisher, JJ., concur.
ORDERED that the decision is affirmed, without costs.

Footnotes

Footnote 1: The WCLJ previously found prima facie medical evidence for the neck and back injuries based upon the report of claimant's chiropractor.

Footnote 2: Although requested by the carrier, claimant's hospital records were not produced. Claimant later reported to his treating orthopedist that he was treated the day of the incident at the hospital.